UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AARON MCCOY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| GAMESA TECHNOLOGY CORPORATION, INC., ) | |
| GAMESA WIND US, LLC, IBERDROLA ) | |
| RENEWABLES, INC., STREATOR-CAYUGA ) | |
| RIDGE WIND POWER, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | 11 C 592 |
| ) | |
| IBERDROLA RENEWABLES, INC., and ) | |
| GAMESA TECHNOLOGY CORPORATION, INC., ) | |
| ) | |
| Third-Party Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| OUTLAND RENEWABLE ENERGY, LLC, ) | |
| OUTLAND RENEWABLE ENERGY FIELD ) | |
| SERVICES, LLC and OUTLAND ENERGY ) | |
| SERVICES, LLC, ) | |
| ) | |
| Third-Party Defendants. ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the motion of Gamesa Technology Corporation, Inc. ("Gamesa Technology") and Gamesa Wind US, LLC ("Gamesa

Wind") (collectively, "Gamesa") to dismiss the counterclaims asserted by Outland Renewable Energy, LLC n/k/a Renova Renewable Energy, LLC ("ORE"), Outland Renewable Energy Field Services n/k/a Outland Energy Services, LLC ("OREF") and Outland Energy Services, LLC f/k/a Outland Energy Field Services, LLC ("OES") (collectively, "Outland") for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). For the reasons stated below, the motion is denied.

## BACKGROUND

This lawsuit arises out of personal injuries that Aaron McCoy ("McCoy"), an ORE employee, sustained while performing services on a wind turbine manufactured by Gamesa Wind, an affiliate of Gamesa Technology. The wind turbine was located at the Cayuga Ridge wind farm, a wind farm operated by Iberdrola Renewables, Inc. ("Iberdrola"). McCoy's injuries allegedly resulted when McCoy was installing a turbine and a Gamesa Technology and/or Iberdrola employee activated the power source to the turbine. McCoy originally filed a state court action in Illinois, alleging claims against Gamesa Technology and Iberdrola. On January 26, 2011, Iberdrola removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332.

**Relationship Between Gamesa, Iberdrola, and Outland**

Gamesa Wind manufactures and sells wind turbines to various asset owners, including Iberdrola. As part of the sale of wind turbines, Gamesa Wind agrees to

provide operation, maintenance, and repair services for the purchased wind turbines for a specified period of time. Because Gamesa Wind does not have employees to provide such services, Gamesa Wind subcontracts with other companies, like ORE, to provide such services to its customers.

On November 19, 2009, Gamesa Wind and ORE entered into a Maintenance Service Agreement (the "MSA"). According to the MSA, ORE would perform operation, maintenance, and repair services for a number of wind farm facilities. To retain ORE's services for a project, the MSA required Gamesa Wind and ORE to execute a Statement of Work. In connection with the MSA and attached as an exhibit to the MSA, the parties executed a Statement of Work wherein ORE agreed to provide services at the Cayuga Ridge wind farm in Illinois. The parties did not submit evidence of any other Statement of Work executed under the MSA.

The MSA contained a forum selection clause and choice-of-law clause which stated:

> This Contract shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the conflict of laws principles thereof. The parties hereby submit to the exclusive jurisdiction of the state and federal courts located in the Commonwealth of Pennsylvania for the purposes of all legal proceedings arising out of or relating to this Contract.

**Relevant Procedural History**

In June 2011, Iberdrola filed third party complaints against Outland and Gamesa. In July 2011, Gamesa filed cross-claims against Outland for contribution under Illinois'

Joint Tortfeasors Contribution Act, 740 Ill. Comp. Stat. 100/0.01, (the "Contribution Act") and against OES and ORE for indemnification under the MSA. On September 23, 2011, OES and ORE moved to dismiss Gamesa's indemnification cross-claims and, on October 25, 2011, Gamesa voluntarily dismissed those claims. In the meantime, on September 22, 2011, Outland asserted twenty three counterclaims against Gamesa. In its answer, Outland also asserted a contribution claim against Gamesa under the Contribution Act.

Neither Gamesa, Iberdrola, nor Outland is a citizen of Illinois. Pointing to the forum selection and choice-of-law clauses in the MSA, Gamesa moves to dismiss the counterclaims asserted by Outland for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

## LEGAL STANDARD

A party may challenge venue based on a forum selection clause by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3). *Mazumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006). In ruling on a motion to dismiss under Rule 12(b)(3), the court may consider facts outside the pleadings. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). The party challenging the enforcement of the forum selection clause bears the burden of proving that venue is proper and the forum selection clause is unenforceable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

**DISCUSSION**

Gamesa argues that the Court should dismiss Outland's counterclaims because the claims arise under or relate to the MSA, an agreement containing an enforceable forum selection clause. Before assessing the validity of the forum selection clause, the Court must address Outland's contention that Gamesa waived its right to enforce the forum selection clause.

**I.      Waiver of the Forum Selection Clause[1]**

Outland argues that Gamesa waived its right to enforce the forum selection clause by asserting claims relating to the MSA in this action in Illinois rather than in Pennsylvania, the forum mandated by the MSA's forum selection clause.

Gamesa originally asserted contribution and indemnification cross-claims against Outland. Gamesa argues that the contribution cross-claims do not arise out of or relate to the MSA. According to Gamesa's pleading of the contribution claims, Gamesa seeks to hold Outland liable under Illinois' Contribution Act to the extent Outland's negligence caused McCoy's injuries. In pleading the contribution claims, Gamesa does not refer to, or rely on, the MSA. Because Gamesa's contribution claims are premised on Illinois law and do not relate to the MSA, Gamesa did not waive its right to enforce the forum selection clause by asserting contribution claims.

---

[1] The parties agree that the Court should apply federal law when evaluating whether Gamesa waived its right to enforce the forum selection clause.

As to the indemnification cross-claims, which do arise out of the MSA, Gamesa argues that it preserved its right to enforce the forum selection clause by voluntarily dismissing those claims in October 2011. A rebuttable presumption arises that a party waived the right to enforce a forum selection clause where the party files a claim in a court different than the court mandated by the forum selection clause. *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 743, 746 (7th Cir. 2007); *see Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995).[2] Before inferring a waiver of the right to enforce a forum selection clause, the court considers the totality of the circumstances and determines whether the party acted consistently with the right to enforce the clause. *See Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650-51 (7th Cir. 2000). The relevant factors include whether the allegedly defaulting party acted diligently, participated in litigation or discovery, substantially delayed the request to enforce the forum selection clause, or caused prejudice to the other party. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011).

The court first examines Gamesa's diligence in asserting its right to enforce the forum selection clause and the extent of its participation in this case. A party's voluntary participation in the litigation is important because the court has an interest in

---

[2] An arbitration clause is a species of a forum selection clause. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533-34 (1995). Accordingly, cases discussing a waiver of the right to arbitrate pursuant to a contractual arbitration clause are relevant to the waiver of the right to enforce a forum selection clause.

preventing parties from waiting to see how they fare in one court before demanding resolution of the claims in another court, duplicative adjudication of disputes, and undue prejudice that results from a party spending time and money on litigation that will not ultimately resolve the case. *Kawasaki*, 660 F.3d at 994-95. In the context of a waiver of the right to arbitration, the Seventh Circuit has found a waiver in cases where the party requested arbitration after receiving an adverse ruling or participating in several months of discovery. *See, e.g., Grumhaus*, 223 F.3d at 651 (filing suit in state court and waiting nearly six months after state court dismissed the complaint before demanding arbitration was inconsistent with an intent to arbitrate); *see, e.g., Cabinetree*, 50 F.3d at 390-91 (finding that participation in several months of discovery was inconsistent with intent to arbitrate). Here, while Gamesa willfully filed the indemnification cross-claims, it voluntarily withdrew the claims a few months later and shortly after Outland moved to dismiss the claims. Unlike the cases where the party objected to the forum after participating in discovery or receiving an adverse ruling, Gamesa withdrew the claims before engaging in related discovery and before this Court ruled on Outland's motion to dismiss. Additionally, Gamesa timely objected to venue within the time frame permitted under Federal Rule of Civil Procedure 12(h)(1). Because Gamesa withdrew the indemnification claims in a timely manner and before this Court issued a ruling on the merits, Gamesa did not meaningfully participate in the litigation of those claims.

The Court next analyzes whether Gamesa's filing of the indemnification cross-claims prejudiced Outland. The court considers prejudice to the other party only when the prejudice results from conduct allegedly constituting the waiver. *See Kawasaki*, 600 F.3d at 998. Outland argues that it suffered prejudice by engaging Illinois counsel and expending time and effort responding to Gamesa's claims. However, aside from the dismissed indemnification claims, Outland overlooks the fact that other claims are pending against it, including Iberdrola's claims and Gamesa's contribution claim. Thus, even if Gamesa had not filed the indemnification cross-claims, Outland would have likely engaged Illinois counsel and expended time and effort responding to the other pending claims. Therefore, Outland's alleged prejudice did not arise from Gamesa's filing of the indemnification cross-claims.

As an additional matter, the Court finds significant the fact that Gamesa did not initially choose this forum. Rather, McCoy initiated this action in Illinois by suing Gamesa as a defendant. The Court recognizes a distinction between initially filing a complaint in a forum other than the one designated in a forum selection clause and asserting cross-claims in a forum selected by a third-party. Gamesa asserted cross-claims in a forum selected by McCoy. This fact further weighs against a finding of waiver considering that Gamesa voluntarily withdrew the indemnification claims arising under the MSA.

For these reasons, Gamesa did not waive its right to enforce the forum selection clause.

## II. Validity of the Forum Selection Clause and Choice-of-Law Clause

Outland argues that the Illinois Building and Construction Contract Act, 815 Ill. Comp. Stat. 665/10, (the "Illinois Construction Act") invalidates the MSA's forum selection clause and choice-of-law clause. The Illinois Construction Act provides that "[a] provision contained in or executed in connection with a building and construction contract to be performed in Illinois that makes the contract subject to the laws of another state or that requires any litigation, arbitration, or dispute resolution to take place in another state is against public policy" and, therefore, void and unenforceable. The Illinois Construction Act does not require parties to resolve disputes in Illinois or under Illinois law, but precludes parties from agreeing to another forum or law. Such a law leaves open the possibility of filing suit in Illinois.

The parties' primary dispute is whether the Illinois Construction Act applies in light of the MSA's choice-of-law clause identifying Pennsylvania law as the governing law. The Seventh Circuit has held that "[s]implicity argues for determining the validity and meaning of a forum selection clause . . . by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears." *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007). To determine the applicable

substantive law in a diversity case, the federal court must apply the choice of law rules of the forum state. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704-05 (7th Cir. 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy." *Thomas*, 381 F.3d at 705 (finding that Illinois law permitted the court to recognize the choice-of-law clause in the parties' agreement); *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000).[3] Here, Outland argues that the forum selection clause and choice-of-law clause are unenforceable because the clauses are contrary to Illinois' fundamental public policy, as articulated in the Illinois Construction Act. Indeed, the Illinois Construction Act declares that forum selection clauses and choice-of-law clauses in certain construction contracts are against public policy and, therefore, unenforceable. Thus, as long as the Illinois Construction Act applies to the MSA, the forum selection and choice-of-law clauses are invalid and unenforceable.

Gamesa argues that Outland has not demonstrated that the Illinois Construction Act applies. The Illinois Construction Act applies to a forum selection clause or choice-of-law clause contained in a "building and construction contract" to be performed in Illinois. 815 Ill. Comp. Stat. 665/10. A "building and construction contract" is a

---

[3] Gamesa concedes that a forum selection clause is unreasonable and should not be enforced if enforcement would contravene a strong public policy of "*the forum in which the suit is brought*." *See* Dkt. 175 at 13 (emphasis added) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

"contract for the design, construction, alteration, improvement, repair, or maintenance of real property, highways, roads, or bridges." 815 Ill. Comp. Stat. 665/5. The Illinois Construction Act does not define "real property." Black's Law Dictionary defines "real property" as "land and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land." Black's Law Dictionary (9th ed. 2009) (defining "property").

The MSA constitutes a contract for the design, construction, alteration, improvement, repair, or maintenance of real property because Gamesa Wind hired ORE to provide operation, maintenance, and repair services for wind turbines, which are attached to or erected on land. Further, according to the Statement of Work executed in connected with the MSA, ORE was to perform the services in Illinois. Because the MSA is a "building and construction contract" to be performed in Illinois, the Illinois Construction Act applies.[4]

Finally, Gamesa argues that, as applied in this case, the Illinois Construction Act constitutes an impermissible burden on interstate commerce in violation of the dormant Commerce Clause of the United States Constitution. The Commerce Clause grants Congress the power "[t]o regulate Commerce . . . among the several States." U.S.

---

[4] In its motion, Gamesa purports to reserve its right to argue that the Illinois Construction Act does not apply because it is a company primarily engaged in the business of selling tangible personal property under 815 Ill. Comp. Stat. 665/20. Gamesa provided no authority or evidence supporting this position and, thus, has waived this undeveloped argument. *See, e.g., Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007).

Const. art. I, § 8, cl.3. The Commerce Clause contains a negative implication, known as the dormant Commerce Clause, which invalidates certain state statutes regulating interstate commerce. *Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003). A state statute implicates the dormant Commerce Clause only if the statute burdens interstate commerce. *Id.* If the dormant Commerce Clause applies, the court must first determine whether the statute discriminates against interstate commerce or regulates evenhandedly with only incidental effects on interstate commerce. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). A statute discriminates against interstate commerce by benefiting in-state economic interests and burdening out-of-state economic interests. *Id.* If the statute discriminates against interstate commerce, the law is virtually *per se* invalid and will survive only if it advances a legitimate purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. *Dep't of Revenue v. Davis*, 553 U.S. 328, 338 (2008); *Oregon Waste*, 511 U.S. at 99. "By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid 'unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Oregon Waste*, 511 U.S. at 99 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). State laws frequently survive this level of scrutiny. *Davis*, 553 U.S. at 339.

First, the Court must determine whether the Illinois Construction Act regulates interstate commerce. A statute regulates interstate commerce if it is directed at the instrumentalities, channels, or goods or things involved in interstate commerce. *See United States v. Morrison*, 529 U.S. 598, 617 (2000). Contrary to Gamesa's argument, the mere formation of a contract between persons in different states does not trigger the Commerce Clause. *W. Live Stock v. Bureau of Revenue*, 303 U.S. 250, 253 (1938). Instead, Gamesa must demonstrate that performance of the contract is within the Commerce Clause's protection. *Id.*

Gamesa suggests that the Illinois Construction Act improperly regulates commerce occurring wholly outside of Illinois. Gamesa's argument lacks merit since the Illinois Construction Act, by its express terms, only applies to building and construction contracts performed in Illinois. *Cf. Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (finding Illinois law unconstitutional because it could regulate a tender offer not affecting a single Illinois shareholder and, thus, regulate commerce taking place wholly outside of Illinois' borders) (plurality opinion). Gamesa fails to explain why performance of the contract in this case involved interstate commerce; accordingly, the Court's analysis is based on the limited evidence submitted by the parties. Even though the MSA did not limit performance to any particular state, the MSA expressly contemplated that the parties would enter into subsequent contracts for each project.

Based on the evidence submitted, the parties entered into only one contract in connection with the MSA and that contract required ORE to perform operation, maintenance, and repair services for wind turbines in Illinois. Because performance of the contract took place wholly within Illinois, such performance did not involve interstate commerce.[5]

Even assuming the Illinois Construction Act regulates interstate commerce in this case, the statute is not discriminatory because it applies equally to all individuals executing certain construction contracts which are performed in Illinois. Moreover, as

---

[5] The Court has found no cases, and the parties have cited none, evaluating whether a statute identical to the Illinois Construction Act regulates interstate commerce or violates the dormant Commerce Clause. However, courts have examined state statutes which preclude the filing of a lawsuit, or render a contract formed in the state void, by a foreign entity that has not registered to do business in the state. *See, e.g., Eli Lilly & Co. v. Sav-On Drugs, Inc.*, 366 U.S. 276 (1961); *see also S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991). The Supreme Court has held that such a statute does not offend the Commerce Clause when applied to the foreign entity's intrastate commerce within the state. *Eli Lilly*, 366 U.S. at 279 (evaluating constitutionality of state statute precluding suit by a foreign entity which has not obtained a certificate of authority to do business in the state and sues based on a contract made within the state). For instance, in *S&H Contractors*, the Eleventh Circuit assessed the constitutionality of a state statute which rendered void any contract entered into in the state by a foreign entity that had not obtained a certificate of authority to transact business within the state. 906 F.2d at 1509. First, applying state law, the court found that a contract with an out-of-state individual for the assembly of machinery in the forum state constitutes an intrastate transaction not involving interstate commerce. *Id.* at 1509-14; *see also Anderson v. Shipowners' Ass'n of Pac. Coast*, 272 U.S. 359, 364 (1926) (noting that building and construction work generally does not constitute commerce even if materials are shipped from other states). The court then held that enforcement of the statute, which voided the contract, did not violate the dormant Commerce Clause because the transaction was sufficiently localized within the state and was not an essential element of an interstate transaction. *S&H Contractors*, 906 F.2d at 1511-14. Following the analysis in *S&H Contractors*, application of the Illinois Construction Act in this case does not infringe upon the dormant Commerce Clause because Outland performed the contract in Illinois and such performance was not an essential element of an interstate transaction.

Gamesa concedes, the statute benefits no in-state economic interest where, as here, neither party is a citizen of Illinois. Because the Illinois Construction Act is an evenhanded regulation, the statute is valid unless Gamesa demonstrates that the burden imposed on commerce is clearly excessive in relation to the putative local benefits. *See Pike*, 397 U.S. at 142. Because Gamesa fails to articulate any burden imposed on commerce by the Illinois Construction Act, the Court declines to balance any hypothetical burdens and benefits. *See Baude v. Heath*, 538 F.3d 608, 612 (7th Cir. 2008) (explaining that the balancing approach requires evidence and "more than lawyers' talk").

For the reasons stated above, Gamesa has not demonstrated that the Illinois Construction Act violates the dormant Commerce Clause. The Illinois Construction Act therefore renders the forum selection and choice-of-law clauses unenforceable.

## CONCLUSION

For the foregoing reasons, the Court denies Gamesa's motion to dismiss.

*[signature: Charles P. Kocoras]*
_____
Charles P. Kocoras
United States District Judge

Dated:  January 26, 2012