UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON MCCOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GAMESA TECHNOLOGY CORPORATION, INC., a | ) | |
| Delaware Corporation, GAMESA WIND US, LLC, a | ) | |
| Delaware Limited Liability Corporation, IBERDROLA | ) | |
| RENEWABLES, INCORPORATED, an Oregon | ) | |
| Corporation, and STREATOR-CAYUGA RIDGE WIND | ) | |
| POWER, LLC, a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | 11 C 592 |
| | ) | |
| IBERDROLA RENEWABLES, INC., and | ) | |
| GAMESA TECHNOLOGY CORPORATION, INC., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OUTLAND RENEWABLE ENERGY, LLC, | ) | |
| OUTLAND RENEWABLE ENERGY FIELD | ) | |
| SERVICES, LLC and OUTLAND ENERGY | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on a motion for judgment on the pleadings

by Counter-Defendants Gamesa Technology Corporation ("Gamesa Corp.") and

Gamesa Wind US, LLC ("Gamesa Wind") (together "Gamesa") under Federal Rule of Civil Procedure 12(c). For the following reasons, Gamesa's motion is granted.

## BACKGROUND[1]

While this litigation began as a lawsuit by Outland's employee for personal injuries, that event is only tangentially related to the counter-claims that Counter-Plaintiffs Outland Renewable Energy, LLC; Outland Renewable Energy Field Services, LLC; and Outland Energy Services, LLC (together "Outland") now assert against Gamesa. Gamesa, a wholly-owned subsidiary of Spanish company Gamesa Corporación Tecnológica, S.A. ("Gamesa Spain"),[2] manufactures and sells wind turbines to wind farms. Wind turbine sales agreements provided for Gamesa to be the purchaser's exclusive source for the turbines' operation, maintenance, and repair services ("O&M services") for a period of time. Gamesa did not self-perform O&M services, but instead subcontracted the work to other companies. Outland was one such company.

### The Gamesa-Outland Relationship

Outland's relationship with Gamesa lasted from August 2006 until October 2010. Gamesa subcontracted its O&M services to Outland via "Purchase Orders," contracts

---

[1] For the purposes of a motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

[2] Gamesa Spain is not a party to this lawsuit; Outland alleges that Gamesa is owned and controlled by Gamesa Spain.

relating to O&M services projects limited to "a specific task, or set of tasks." In 2010, Outland generated approximately $6.1 million in revenue from performing O&M services under Purchase Orders. In October 2008, Gamesa and Outland entered into the first of two agreements which set forth long-term commitments for the provision of O&M services. Under the Framework Services Agreement ("FSA"), Gamesa agreed to subcontract O&M services to Outland at certain wind farms operated by Iberdrola Renewables, Inc. ("Iberdrola"), a purchaser of Gamesa turbines. In November of 2009, Gamesa and Outland entered into the Maintenance Services Agreement ("MSA"), which placed additional Iberdrola wind farms, including Cayuga Ridge Wind Farm ("Cayuga Ridge"), under the purview of the FSA. The MSA also required Outland to train its employees on health and safety standards, and to comply with Iberdrola's site-specific rules and safety procedures. Notwithstanding the FSA and MSA, Gamesa continued to tender Purchase Orders to Outland related to other projects until their relationship ended.

Since 2006, Outland has made substantial investments in personnel and equipment in order to service the Gamesa account. Outland made these investments based on Gamesa's assurances that it did not intend to compete with Outland for O&M services, and that Gamesa would continue to provide a minimum level of work to Outland.

<u>Safety Protocols and Aaron McCoy's Injury</u>

Outland technicians required its wind turbine technicians to employ a safety procedure known as the "lock-out tag-out" ("LOTO") procedure. The LOTO procedure complies with industry standards and federal regulations. In September 2010, without Outland's off-site management's knowledge, Gamesa and Iberdrola instructed Outland's on-site personnel to follow a modified procedure ("modified LOTO procedure"), which was put in place to increase maintenance efficiency. On October 20, 2010, while working under the modified LOTO procedure, Aaron McCoy ("McCoy") and several other Outland technicians were performing repair and maintenance work on wind turbines at Cayuga Ridge. At one point, an Outland technician radioed an Iberdrola technician to power up a particular wind turbine. The Iberdrola technician mistakenly powered up the wind turbine that McCoy was then scaling. An electrical explosion occurred, and McCoy sustained injuries as a result.

The United States Occupational Health and Safety Administration ("OSHA") conducted an investigation of Cayuga Ridge in response to the accident. On April 8, 2011, OSHA issued six citations against Outland.

<u>Gamesa's Attempt to Eliminate Outland</u>

Outland alleges that the demand for wind turbines exceeded supply, resulting in a shortage of wind turbines. This, according to Outland, created sufficient market

power in wind turbine manufacturers with "significantly less than a major share of the overall wind turbine sale market," and that a wind turbine manufacturer possessed sufficient market power – the power to raise price without significantly lowering volume – to harm its customers. Outland alleges that Gamesa exercised its market power by unlawfully tying O&M services to wind turbines.

In the summer of 2010, due to shrinking market share and declining turbine demand, Gamesa decided to develop an internal O&M services division. According to Outland, this decision spelled the end of the Gamesa-Outland relationship. Gamesa assured Outland that it did not intend to compete with Outland, but nevertheless openly attempted to recruit technicians away from Outland. These efforts were largely unsuccessful. In January 2011, Gamesa's head of service expressed his interest in acquiring Outland, but Outland's president responded that Outland wished to remain independent.

Outland states that Gamesa then secretly attempted to put Outland out of business so that Gamesa could absorb Outland's employees at reduced wages while simultaneously eliminating Outland as a competitor. During this time, Gamesa assured Outland that Gamesa would continue to subcontract O&M services work.

On February 18, 2011, Outland and Duke Energy ("Duke") signed a letter of intent declaring that Duke would purchase a 25% share of Outland (the "acquisition").

Duke was a competitor of Iberdrola's. According to Outland, Gamesa saw the acquisition as a threat to its scheme to eliminate Outland. Gamesa called Outland eight days later and stated that Iberdrola may refuse to allow Outland to perform O&M services work on its wind farms if the acquisition were consummated. A month later, Outland contacted Iberdrola directly and learned that contrary to Gamesa's statements, Iberdrola had no reservations about the acquisition.

On April 14, 2011, Gamesa called Duke directly to tell Duke that it opposed the acquisition. Gamesa then allegedly attempted to induce Duke to breach the letter of intent by discussing wind turbine sales agreements and an offer for a five-year extension of Gamesa's O&M services warranty. Gamesa did not persuade Duke, which remained committed to proceeding with the acquisition.

On May 11, 2011, Duke and Outland agreed that Duke would acquire 100% of Outland. The following day, Gamesa sent a letter to Outland declaring that Outland violated the MSA by failing to comply with certain health and safety standards. Gamesa specifically referred to the events leading to McCoy's injury and the resulting OSHA citations. The letter also stated that Iberdrola demanded that Gamesa remove Outland from all of its wind farms. Gamesa then ceased subcontracting any new business to Outland via Purchase Orders, the FSA or the MSA. Outland alleges that this caused Duke to drop the acquisition price by $15 million. The acquisition was never

completed. On August 31, 2011, Gamesa's attorneys sent letters to Outland which allegedly disclosed that Gamesa had contacted various third parties in an attempt to interfere with Outland's ability to receive subcontracts with these third parties ("August 31st letters").

### Procedural Posture

Outland filed a 22-count counter-claim against Gamesa and Iberdrola for violations of federal and state antitrust law and common law claims for indemnification, tortious interference with a contract and with prospective economic advantage, defamation and various defamation-related torts, accounting, breach of contract, and breach of the duty of good faith and fair dealing. On January 26, 2012, the Court dismissed Outland's claims against Iberdrola. *McCoy v. Gamesa Tech. Corp., Inc.*, 11 C 592, 2012 WL 245166 (N.D. Ill. Jan. 26, 2012). Now before the Court is Gamesa's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on all of Outland's claims less its indemnification claim.

### LEGAL STANDARD

A party may request judgment on the pleadings once the pleading period has closed. Fed. R. Civ. P. 12(c); *Forseth v. Vill. of Sussex*, 199 F.3d 363, 367 n.5 (7th Cir. 2000). A Rule 12(c) motion is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *Guise v. BMW Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004). A

Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). To state a claim, the allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must provide sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to withstand a motion to dismiss under Rule 12(b)(6). *Id.*

## DISCUSSION

## I.     Defamation, Disparagement, and Injurious Falsehood

Outland alleges that Gamesa is liable for defamation, injurious falsehood, and commercial and property disparagement. To establish a claim for defamation, a plaintiff must make allegations that demonstrate that the defendant (1) made a false statement about the plaintiff, (2) made an unprivileged publication of the statement to a third party, and (3) the publication caused damage to the plaintiff. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009).

Outland highlights three allegations in support of its defamation claim, none are sufficient to support a defamation claim. First, Outland alleges that Gamesa Spain made

defamatory statements. Gamesa Spain is not a defendant to this action, and Outland makes no allegation that Gamesa Spain was speaking on behalf of Gamesa. Outland therefore cannot rely on these statements in stating a claim against Gamesa.

Secondly, Outland refers to Gamesa's attempts to induce Duke to refrain from acquiring Outland. In addition, Outland alleges that the August 31st letters "made it clear that Gamesa had engaged in new interference with Outland's outgoing prospective economic relations by referencing specific third parties . . .," and that the letters confirmed that Gamesa was continuing its attempts to put Outland in a false light with Outland's potential customers. To maintain a defamation claim, a plaintiff must clearly identify the allegedly defamatory statement. *Heying v. Simonaitis*, 466 N.E.2d 1137, 1141 (Ill. App. Ct. 1st Dist. 1984). These allegations respectively describe Gamesa's attempts to induce Duke and Outland's subjective understanding of a letter. The glaring absence of a statement attributable to Gamesa is fatal to Outland's defamation claim. Its defamation claim therefore must be dismissed.

Outland's claims for commercial disparagement, disparagement of property, and injurious falsehood also fail, since each of those claims require a plaintiff to sufficiently allege a defamatory statement. *See Imperial Apparel, LTD v. Cosmo's Designer Direct, Inc.*, 853 N.E.2d 770, 781-82 (Ill. App. Ct. 1st Dist. 2006); *Montgomery Ward & Co. v. United Retail, Wholesale & Dep't Store Employees C.I.O.*, 79 N.E.2d 46, 52 (Ill.

1948); *Kolegas v. Heftel Broad. Corp.*, 578 N.E.2d 299, 303-04 (Ill. App. Ct. 2d Dist. 1991) (recognizing that no Illinois court has recognized the existence of a cause of action for injurious falsehood before dismissing on other grounds), *rev'd in part on other grounds*, 607 N.E.2d 201 (Ill. 1992).

## II.    Tortious Interference

Outland advances claims for tortious interference with contractual relations and with prospective economic advantage.  To state a claim for tortious interference of a contract, a plaintiff must allege (1) the existence of a valid and enforceable contract between it and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) the third party's breach; and (5) damages.  *Strosberg v. Brauvin Realty Svcs., Inc.*, 691 N.E.2d 834, 845 (Ill. App. Ct. 1st Dist. 1998).  To state a claim for tortious interference of prospective economic advantage, a party must allege (1) the plaintiff's reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) the defendant's intentional interference that defeat that expectancy; and (4) damages. *Heying*, 466 N.E.2d at 1140-41.  Further, the defendant's interference must have induced a breach or termination of the relationship or expectancy.  *Id.* at 1141.

Outland alleges that Gamesa tortiously interfered with the Purchase Orders, the FSA, and the MSA. Outland and Gamesa were the only parties to those contracts. It is well-settled that "a party cannot tortiously interfere with his own contract; the tort-feasor must be a third party to the contractual relationship." *Douglas Theater Corp. v. Chi. Title & Trust Co.*, 681 N.E.2d 564, 576 (Ill. App. Ct. 1st Dist. 1997). Outland thus cannot state a claim for tortious interference with contractual relations based on agreements with Gamesa.

Outland also alleges that Gamesa tortiously interfered with Outland's prospective economic advantage by intentionally deterring potential Outland customers from doing business with Outland. However, the complaint fails to allege with any specificity how Gamesa interfered with Outland's reasonable expectancy. Outland's naked allegations that its prospective contractual relations were interfered with are not enough to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[3]

---

[3] Outland's brief nevertheless directs the Court's attention to an August 31, 2011 letter sent by Gamesa's attorneys that was not incorporated into the complaint. To the extent that Outland seeks to amend his complaint via his reply brief, the Court declines to do so and instructs Outland to follow the amendment procedures outlined in Federal Rule of Civil Procedure 15. In any case, nothing in the letter gives rise to a claim for tortious interference with prospective economic advantage. The letter states that Outland had solicited Gamesa's customers in violation of a non-compete clause within the FSA, and that Gamesa intended to enforce the agreement. Where a defendant acts to enhance its own interests, it is insulated from liability for harming the plaintiff's

Thirdly, the complaint alleges that Gamesa interfered with Duke's attempted acquisition of Outland.  While a fair reading of the complaint would indicate that Outland's claim is for tortious interference with a contract, Outland's brief clarifies that the claim is one for tortious interference with prospective business advantage.  The claim fails under both theories.

The complaint highlights two instances in which Gamesa allegedly attempted to disrupt Duke's acquisition.  First, on April 14, 2011, Gamesa attempted to induce Duke into scuttling its plans to acquire a stake in Outland.  But as the complaint itself acknowledges, Duke rejected Gamesa's attempts.  Outland cannot plausibly claim that it was harmed by Gamesa's efforts to stifle the acquisition where Gamesa's attempts were rebuffed.  *See Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) ("[The Court] need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law.").

The complaint also seems to suggest that Gamesa's May 12, 2011 letter informing Outland that it was in default of the MSA and its ceasing to tender Purchase Orders to Outland disturbed the acquisition.  However, the complaint lacks any allegation that Gamesa had knowledge of the May 11, 2011 acquisition agreement

---

expectancy. *Fid. Nat'l Title Ins. Co. v. Westhaven Props. P'ship*, 898 N.E.2d 1051, 1067-68 (Ill. App. Ct. 1st Dist. 2007).

between Duke and Outland. That the letter was sent one day after the acquisition agreement was signed is not enough to infer Gamesa's knowledge of the agreement. *See Twombly*, 550 U.S. at 555 ("The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (citation and quotation omitted). The claim is therefore dismissed.

## III. Antitrust Claims

Outland alleges that Gamesa violated federal and state antitrust laws by unlawfully tying its O&M services to the sale of wind turbines.[4] However, the Court does not reach Outland's allegations of a tying arrangement because Outland has failed to make a threshold showing that Gamesa participated in an unlawful conspiracy, or that it possessed monopoly power.

Section 1 of the Sherman Act prohibits contracts, combinations, or conspiracies that result in unreasonable restraints of trade. 15 U.S.C. § 1; *Denny's Marina v. Renfro Prods.*, 8 F.3d 1217, 1220 (7th Cir. 1993). To state a § 1 claim, a plaintiff must allege (1) an agreement; (2) resulting in an unreasonable restraint of trade; (3) that injured the plaintiff. *Omnicare, Inc. v. Unitedhealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011).

---

[4] Outland brings claims under the antitrust laws of Minnesota, Texas, and Illinois. Interpretation of these statutes rely on the application of federal antitrust law.

Outland alleges that Gamesa conspired with Gamesa Spain, its parent company. In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), the Supreme Court held that a parent corporation is incapable of conspiring with its wholly-owned subsidiary under §1 of the Sherman Act. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 541 n.19 (7th Cir. 1986). The complaint alleges that "Gamesa Spain owns . . . 100% of the shares of" Gamesa Corp. Gamesa Corp. is therefore incapable of conspiring with Gamesa Spain under § 1. Furthermore, the complaint fails to highlight any disparate purpose between Gamesa Spain and Gamesa Wind, or between Gamesa Technology and Gamesa Wind. Because the complaint fails to allege a conspiracy by two or more distinct actors, its claims under § 1 and related state law cannot prevail.

Outland also claims that Gamesa unlawfully monopolized the wind turbine O&M services market. To state a claim for monopolization, a plaintiff must allege (1) the defendant's possession of monopoly power in a relevant market, and (2) its willful acquisition or maintenance of that power. 15 U.S.C. § 2; *MCI Comm'ns Corp. v. Amer. Tel. & Tel. Co.*, 708 F.2d 1081, 1106 (7th Cir. 1986). Monopoly power "has long been defined as the power to exclude competition or to control price . . . ." *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1414 (7th Cir. 1989).

Outland fails to adequately allege that Gamesa possessed monopoly power. The complaint alleges that at its height, Gamesa controlled 10% of the wind turbine market

- 14 -

in the United States, far below what is necessary for the Court to infer that it possessed monopoly power. *MCI Comm'ns Corp.*, 864 F.2d at 1106-07 (a market share of at least 70 percent allows courts to infer the existence of monopoly power) (citing cases). Outland attempts to save its claim by alleging that demand for wind turbines so far outpaced supply that even manufacturers with less than a major market share could exercise market power. This theory is fundamentally at odds with Gamesa's supposed motivation for starting an internal O&M services division and its subsequent attempts to eliminate Outland: the shrinking demand for wind turbines. If the market for wind turbines favored turbine sellers, as Outland alleges, Gamesa presumably would never have attempted to enter the O&M services market in the first place. Outland fails to offer any explanation for this inherent inconsistency in its complaint. Because there is no cognizable allegation of monopoly power, Outland's claims under § 2 lack merit.

Because Outland failed to allege the necessary elements to establish an unlawful conspiracy or monopoly power, its antitrust claims fall short of stating a claim.

## IV. Breach of Contract

Outland claims that Gamesa is liable for breach of contract because it ceased to tender Purchase Orders to Outland for transactional work. To state a claim for breach of contract in Illinois, a plaintiff must allege (1) the existence of a valid and enforceable contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the

- 15 -

contract; and (4) resulting damages to plaintiff.  *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001).

Outland falls far short of stating a claim for breach of contract.  Outland never alleges that Gamesa's assurances of future work were reduced to a valid and enforceable contract.  Furthermore, Outland failed to allege that Gamesa breached any of the three contracts that were pled: the Purchase Orders, FSA, and MSA.  As such, Outland failed to sufficiently allege a breach of contract.

## V.  Accounting, Intentional Interference with Directives, and Breach of Duty of Good Faith and Fair Dealing

Outland failed to defend its claims under Counts IV, VII and XIV against Gamesa's motion.  It therefore waives those claims.  *See Lopez v. Pactiv Corp.*, 11 C 4599, 2012 WL 1463579, at *1 (N.D. Ill. Apr. 27, 2012) (collecting cases); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).

## VI.  Declaratory Judgment and Injunctive Relief

Outland claims that it is entitled to declaratory judgment that the FSA and MSA are invalid and unenforceable, and seeks an injunction preventing Gamesa from interfering with Outland's prospective economic relations.  Gamesa fails to allege that Gamesa breached the FSA or MSA.  Furthermore, as the Court stated in the January 26th Opinion, "[a] request for an injunction is a remedy and not a cause of action."

*McCoy*, 2012 WL 245166, at *7. Its request for declaratory judgment and injunctive relief is dismissed.

## CONCLUSION

For the foregoing reasons, Gamesa's motion for judgment on the pleadings is granted.

_____

Charles P. Kocoras
United States District Judge

Dated:  September 26, 2012

- 17 -