UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON MCCOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 11 C 592 |
| IBERDROLA RENEWABLES, INCORPORATED | ) | |
| an Oregon corporation, STRATOR-CAYUGA | ) | |
| RIDGE WIND POWER, LLC a Delaware | ) | |
| corporation, | ) | |
| | | |
| Defendants. | | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge**:**

This matter comes before the Court on the cross-motions for partial summary judgment of Plaintiff Aaron McCoy ("McCoy") and Defendants Iberdrola Renewables, Inc. ("Iberdrola") and Streator-Cayuga Ridge Wind Power, LLC ("Streator") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 56. For the following reasons, McCoy's motion is denied, Streator's motion is granted, and Iberdrola's motion is granted in part and denied in part.

**BACKGROUND**

I.      Facts

The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or

1

assertion unsupported by the evidence in the record.[1]   Iberdrola is an Oregon corporation that operates wind farms, including the wind farm at Cayuga Ridge ("Cayuga Ridge") in Pontiac, Illinois.   Streator is a Delaware corporation that is an Iberdrola subsidiary and held title to Cayuga Ridge at the time of the events in question.   Outland Renewable Energy, LLC a/k/a Outland Energy Services, LLC ("Outland") was a Minnesota company that provided wind farm operation, maintenance, and repair services to the wind energy industry in the United States and abroad.   Gamesa Wind U.S., LLC and Gamesa Technology Corp. ("Gamesa") manufactures wind turbines ("turbines").

Outland and Gamesa entered into an agreement whereby Outland would perform services for Gamesa at Iberdrola wind farms, including Cayuga Ridge. McCoy worked at Cayuga Ridge as a technician employed by Outland.  Outland had two supervisors at Cayuga Ridge: Mike Piper ("Piper") and Alex Rice ("Rice").  Ross Williamson ("Williamson") was the Gamesa supervisor at Cayuga Ridge.   Curtis Radke ("Radke") and Dale Thomas ("Thomas") supervised the operation at Cayuga Ridge for Iberdrola.  Outland employees worked at the direction of Gamesa and did

---

[1] Defendants object to the form of McCoy's statement of facts and memorandum of law. Although McCoy does not strictly adhere to the requirements of Local Rule 56.1, the responses do not amount to total non-compliance with Local Rule 56.1, which would be significant enough to warrant ignoring McCoy's statement of facts and memorandum of law in their entirety. Defendants' objection is overruled.

not take orders from Iberdrola. If Outland employees had concerns, Williamson served as the liaison to Iberdrola.

McCoy performed transformer maintenance on the turbines. Because no power was available for the turbines, which were located 255 feet above ground, McCoy and other employees could not use the elevator to descend from the transformer rooms. Rather, the employees had to climb down by ladder. This could take as much as a half hour to accomplish, though Outland employee Corey Hart ("Hart") testified that he made the descent in approximately ten minutes.

The Occupational Health and Safety Administration ("OSHA") had strict procedures for energizing the turbines (also referred to as towers). The turbines were energized via the operation of a gear switch, which required a key to activate it. Under the lock-out tag-out ("LOTO") procedure, an Iberdrola employee would place the key in a lockbox while an Outland employee was working on one of the transformers. An Outland employee would place his own lock on the lockbox and maintain possession of the key to that lock while he was up tower. As a final precaution, the use of grounding straps was required. Grounding straps divert energy from the tower in case of an erroneous energization to the ground.

In September 2010, Iberdrola employee Evan Bonell ("Bonell"), a senior technician who did not supervise employees, suggested a way in which work could be performed more efficiently. Rice and Piper agreed, and Rice instructed McCoy to follow the modified LOTO procedure. Instead of maintaining possession of their lock

keys, Outland employees now placed them on top of the gear switch. Outland employees radioed Iberdrola employees when work on a particular turbine had been completed, and Iberdrola employees would energize that tower, as the Outland employees would be safely below in a location called the yaw deck. The Outland employees could then use the elevator to climb down to the ground, and this modified LOTO procedure saved the time required to climb down via ladder.

On October 20, 2010, McCoy and Andrew Ehrhardt ("Ehrhardt"), a fellow Outland employee, were working at Tower Q8. Meanwhile, Hart and fellow Outland employee Alex Anderson ("Anderson") were working at Tower L2. McCoy had removed the grounding straps from the transformer at Tower Q8 because he viewed them as a tripping hazard. Hart and Anderson finished their work on Tower L2 and radioed this information to Iberdrola employee Andy Morrissey ("Morrissey"), who informed fellow Iberdrola employee Clay Kreiser ("Kreiser"). Kreiser had been told earlier that he would be energizing certain towers, not including Tower L2. Kreiser mistakenly believed that he had been told to energize Tower Q8. Though Kreiser had been trained on the LOTO procedure, he too was using the less safe modified LOTO procedure. He took the key that should have been with McCoy or Ehrhardt and opened the lockbox, removed the key to the gear switch and energized Tower Q8. An electrical explosion called an arc flash then occurred, and McCoy was severely burned.

II.     Procedural History

The instant litigation has engendered a host of crossclaims and counterclaims, so the Court will detail only the procedural history relevant to the motions now before it.  McCoy originally filed a complaint against Gamesa and Iberdrola in the Circuit Court of Cook County, Illinois, and it was removed to this Court pursuant to 28 U.S.C. § 1441.   Streator and Outland became defendants due to third-party complaints.  McCoy then settled with Gamesa and Outland.  In his four count third amended complaint filed on May 10, 2013, McCoy has alleged one count of negligence and one count of willful and wanton conduct against Streator and Iberdrola separately.   On May 7, 2013, pursuant to this Court's scheduling order, McCoy moved for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. On May 13, 2013, Defendants also moved for partial summary judgment pursuant to Rule 56.

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on which the non-movant bears the burden of proof at trial.  *Id.* at 325.  The non-movant

may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; he must go beyond the pleadings and support his contentions with documentary evidence. *Id.* A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court construes all facts and draws all reasonable inferences in favor of the non-movant. *Smith v. Hope Schs.*, 560 F.3d 694, 699 (7th Cir. 2010). When faced with cross-motions for summary judgment, the court views all facts and draws all reasonable inferences in favor of the party against whom the motion under consideration is made. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 359 (7th Cir. 2011).

## DISCUSSION

### I. Defendants' Motions

### A. Streator's Motion for Summary Judgment

McCoy has alleged both negligence and willful and wanton conduct on the part of Streator. McCoy did not respond with respect to Streator's motion for partial summary judgment, however, instead confining his response to Iberdrola's motion. The Court thus views Streator's motion as unopposed. A non-movant's failure to respond to a motion for summary judgment does not automatically result in a judgment in favor of the movant. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608

(7th Cir. 2006). The ultimate burden of persuasion still remains with the movant to show that it is entitled to judgment as a matter of law. *Id.* at 608.

In order to prevail in an action for negligence, the plaintiff must prove that: (i) the defendant owed a duty to the plaintiff; (ii) the defendant breached that duty; and (iii) the defendant's breach was the proximate cause of the plaintiff's injury. *Bell v. Hutsell*, 955 N.E.2d 1099, 1104 (Ill. 2011). Proximate cause contains two elements: (i) legal cause; and (ii) cause in fact. *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 446 (Ill. 2010). Under Illinois law, there is no separate and independent tort of willful and wanton conduct. *Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012). "Rather, willful and wanton conduct is regarded as an aggravated form of negligence." *Id.* at 887 (citations omitted). In order to obtain damages for willful and wanton conduct, a plaintiff must prove the elements of negligence. *Id.* A plaintiff also must either allege "a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Doe v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 424 (Ill. 2004) (citation omitted). *See also Ziarko v. Soo Line R.R.*, 641 N.E.2d 402, 408 (Ill. 1994) (further detailing the distinction between intentional and reckless willful and wanton conduct).

Streator, an Iberdrola subsidiary, held title to Cayuga Ridge at the time of the accident. Having thoroughly examined the record, the Court can discern no other connection between Streator and the conduct that resulted in McCoy's having sustained injuries. McCoy's complaint alleges that Kreiser was an employee of

7

Streator; however, the record indicates that Kreiser was employed by Iberdrola. McCoy's motion and his response to Defendants' motion focus solely on the actions of Radke, Thomas, Bonell, Morrissey and Kreiser, all Iberdrola employees. Streator claims to have no employees, and the Court has seen no evidence of activity on the part of Streator at Cayuga Ridge. The alleged misconduct involves a deviation from approved safety procedures and Kreiser's having energized the turbine while McCoy was working on the transformer. The facts do not show any conduct by Streator pertaining to the events that led up to McCoy's injuries, so no rational jury could find either negligent or willful and wanton conduct on Streator's part. Hence, Streator's motion for summary judgment is granted.

**B.     Iberdrola's Motion for Partial Summary Judgment**

**1.     Viability of Willful and Wanton Claim as Separate Count**

Iberdrola first avers that McCoy's willful and wanton claim should be dismissed because Illinois does not recognize a separate and independent cause of action for willful and wanton conduct. *See Ziarko*, 641 N.E.2d at 406. This Court does not adopt the broad reading of *Ziarko* that Iberdrola requests. While it is true that McCoy has pleaded his willful and wanton claim in a separate count, the claim is no more than a supplemental allegation of negligence. In other words, McCoy's willful and wanton count is a "claim[] in name only." *See Dwyer v. Reeder*, No. 10 C 1194, 2011 U.S. Dist. LEXIS 56979, at *3 (N.D. Ill. May 25, 2011) (rejecting argument that pleading separate counts invalidated gross negligence, willful and

wanton and punitive damages claims and striking motion to dismiss under Rule 12(b)(6) as moot). Iberdrola's motion on this ground is therefore denied.

**2.      Compensatory Damages**

Iberdrola asks the Court to find as a matter of law that Kreiser's actions were not willful and wanton and to dismiss this count in its entirety for that reason. (The Court shall address the issue of punitive damages in Subsection 3, infra.) McCoy seeks to recover under a theory of respondeat superior. According to this doctrine, an employer is liable for an employee's misconduct if that misconduct is within the scope of the employment. *Bank of Am., N.A. v. Bird*, 911 N.E.2d 1239, 1243 (Ill. App. Ct. 2011). To satisfy the scope requirement, a plaintiff must show that: (i) the conduct was of the kind the employee was employed to perform; (ii) it must have occurred substantially within the authorized time and space limits; and (ii) the employee perpetrated it at least in part to serve the employer. *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991-92 (Ill. 2007). Illinois courts have permitted recovery under respondeat superior even for intentional torts. *See generally Jones v. Patrick & Assocs. Detective Agency*, 442 F.3d 533, 535-56 (7th Cir. 2006) (detailing cases).

Iberdrola concedes that there is a question of fact with respect to McCoy's negligence count also based on respondeat superior. The Court thus deems the criteria of respondeat superior to have been satisfied with respect to the willful and wanton count, for Kreiser was an employee of Iberdrola who was performing his job when he

energized Tower Q8, and Kreiser was not, according to the record before the Court, acting solely in his personal interest but rather to serve Iberdrola.

The question of whether conduct is willful and wanton is a question of fact reserved for the jury except in extraordinary circumstances. *Prowell v. Loretto Hosp.*, 791 N.E.2d 1261, 1265 (Ill. App. Ct. 2003). The Court does not view the instant case as falling into this exception. Kreiser testified that he knew that the modified LOTO procedure was dangerous. Iberdrola argues that Kreiser did not say that the procedure was unsafe, but the Court fails to see the difference between these adjectives. Kreiser had been trained in the proper procedure but did not follow it when he energized Tower Q8. While the record is devoid of evidence that Kreiser had a deliberate intent to harm McCoy or anyone else (the intentional form of willful and wanton conduct), a reasonable jury could find that Kreiser showed a conscious disregard that harm could occur, thus satisfying the reckless form of willful and wanton conduct.

Iberdrola correctly notes that Kreiser and McCoy both testified that Kreiser's actions were a mistake resulting from a miscommunication, as Kreiser should have energized Tower L2 where Hart and Anderson had completed their work instead of Tower Q8 where McCoy and Ehrhardt were still working on transformer maintenance. However, given the hectic activity at Cayuga Ridge in that several crews were working at different towers simultaneously, the Court is persuaded that a reasonable jury could find that Kreiser should have known of the risk of a miscommunication but consciously disregarded it when he did not follow the proper

LOTO procedure. As such, the Court will permit a jury to decide whether Kreiser's act constituted reckless willful and wanton conduct. As no evidence exists that Kreiser deliberately intended to harm anyone, however, the Court holds that Kreiser's conduct did not rise to the level of intentionally willful and wanton. McCoy argues that the conduct did rise to this level because Kreiser deliberately flipped the gear switch to energize Tower Q8, but this act alone does not demonstrate that Kreiser had a deliberate intent to cause harm when he did so.

### 3. Punitive Damages

Iberdrola asks the Court to find that there exists an insufficient factual basis with respect to McCoy's claim for punitive damages. In Illinois, punitive damages "may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others[.]" *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978). While the amount of punitive damages is a question of fact, the issue of whether the particular facts of a case justify punitive damages is a question of law. *Id.* at 359. When a corporate defendant's liability "is predicated upon a theory of respondeat superior, the imposition of punitive damages is narrowly circumscribed." *Kennan v. Checker Taxi Co.*, 620 N.E.2d 1208, 1212 (Ill. App. Ct. 1991) (citation omitted). In *Mattyasovszky v. West Towns Bus Co.*, 330 N.E.2d 509, 512 (Ill. 1975), the Illinois Supreme Court adopted the position of the Restatement (Second) of Agency § 217C (1958) as to when

punitive damages are proper against a corporate defendant on a theory of respondeat superior: (i) if the defendant authorized the doing and the manner of the employee's conduct, (ii) if the employee was unfit and the defendant was reckless in employing him, (iii) if the employee was a manager acting in the scope of his employment, or (iv) if the defendant or a managerial agent of it ratified or approved the act.

McCoy argues that Iberdrola authorized and approved of Kreiser's actions through the ratification of Radke and Thomas. As his main support for this argument, McCoy notes that Radke and Thomas had radios and thus could hear communications between Outland and Iberdrola employees in which it was clear that the LOTO procedure was not being followed. Since Radke and Thomas did not put a stop to the cutting of corners, McCoy posits, they approved of it. Both McCoy and Hart testified, however, that since several crews were working on different turbines simultaneously, it would be very difficult to follow what was occurring with individual crews at the turbines through the monitoring of radio communications.

McCoy also focuses on Bonell, who suggested that the employees implement the modified LOTO procedure. Bonell was not a manager according to the record. Rather, he was a senior technician who was not in charge of any employees. McCoy was instructed by his supervisor Rice, an Outland employee, to follow the modified LOTO procedure. Bonell did not testify that he had informed Radke, Thomas or any other Iberdrola managerial personnel of his suggestion. The record does not contain testimony from any witness aside from speculation that Radke, Thomas, or any other

12

Iberdrola managerial personnel knew of the deviation from the LOTO procedure. If any witness had testified based on firsthand knowledge that an Iberdrola manager had been aware of the deviation before the accident, the Court would view this issue differently, for the issue would then become one of credibility, and it would be improper for the Court to decide the matter at this stage of the proceedings. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (summary judgment is not the appropriate forum for a court to make credibility determinations).

McCoy devotes a substantial portion of his argument to Iberdrola's bonus structure and suggests that it provides further evidence of Iberdrola's having authorized the deviation from the LOTO procedure. The bonus structure, however, merely awarded potential bonuses for plant availability. This common type of reward for productivity does not constitute a ratification of modified procedures that violated OSHA regulations, and none of Iberdrola's materials provided to the Court suggests that safety should ever be disregarded to achieve more productivity. McCoy cites the testimony of Robert Basarich ("Basarich"), an Iberdrola employee, regarding the bonus issue; however, Basarich did not begin his work for Iberdrola until after the accident, so the Court does not view his testimony as relevant to the issues at hand.

The Court also has examined the record with respect to Iberdrola's conduct after the accident, for a corporate defendant can ratify misconduct after it has occurred. *See Robinson v. Wieboldt Stores, Inc.*, 433 N.E.2d 1005 (Ill. App. Ct. 1982). Iberdrola employees were retrained and disciplined, so the Court does not find

any evidence of ratification by Iberdrola after Kreiser's alleged misconduct. Finally, no argument is made that Kreiser was a manager or that he was unfit for the position he held, so these avenues for obtaining punitive damages are also closed to McCoy.

In sum, the Court declines to permit the issue of punitive damages to be decided by a jury when the only support in the record consists of speculative testimony. As such, whether Kreiser's actions amount to reckless willful and wanton conduct will be left for a jury to decide, and McCoy may recover compensatory damages against Iberdrola if a jury so finds; however, no punitive damages may be recovered.

## II.    McCoy's Motion for Partial Summary Judgment

McCoy asks this Court to hold as a matter of law that Kreiser's conduct was willful and wanton and to bar three of Iberdrola's affirmative defenses: (i) negligence; (ii) McCoy as the sole proximate cause of the accident; and (iii) other parties (Outland and Gamesa) as the sole proximate cause of the accident.

### A.    Willful and Wanton

McCoy argues that Kreiser's conduct was willful and wanton as a matter of law because, knowing that deviating from the LOTO procedure was dangerous, Kreiser did so anyway and either intentionally or recklessly endangered McCoy. The Court has already determined that the record is devoid of evidence of Kreiser's deliberate intent to harm anyone but that a reasonable jury could find that his conduct was reckless. To prevail on a claim of willful and wanton conduct, however, McCoy must

establish that Kreiser was negligent; that is, Kreiser's conduct must have proximately caused McCoy's injuries.

In a negligence action, proximate cause is generally an issue of material fact. *Abrams v. City of Chi.*, 811 N.E.2d 670, 674 (Ill. 2004). Proximate cause can also, in rare circumstances, be decided as a matter of law. *See id.* at 674. McCoy contends that his having failed to use grounding straps while in the transformer room was not the proximate cause of the accident. Rather, Kreiser's manipulation of the switch gear was. To support this assertion, McCoy points to the testimony of Outland employee Brian Arndt, who testified that the failure to use the grounding straps did not cause the arc flash. Williamson and Piper indicated, however, that the accident occurred because of this failure; that is, had the grounding straps been worn, the energy that was produced would have been directed to the ground. The issue is further complicated because McCoy and Ehrhardt had placed a wrench on top of the transformer. The precise impact that this tool had is not clear to the Court. Iberdrola has also supplied an affidavit from Ted Kitchen, an electrical engineer with Iberdrola, asserting that the arc flash occurred due to the failure to use grounding straps.

The picture that emerges from the record is a nebulous one. The issues in question are scientific in nature and well beyond the ken of common knowledge. A jury would be in the best position after testimony from qualified experts to render a more informed decision than can this Court at the present time. The Court cannot hold as a matter of law that it was Kreiser's act that caused McCoy's injuries.

15

The Court also is not persuaded by McCoy's analogy that equates failing to use grounding straps with neglecting to wear a seatbelt at the time of an automobile accident. One can be seriously injured even with a seatbelt that is properly fastened by, for instance, flying glass, other debris, or a fire caused by gasoline. In the instant case, Iberdrola argues that no arc flash would have occurred but for McCoy's having removed the grounding straps, which he viewed as a tripping hazard even though their use was required. The Court takes no position on what caused the accident, as this case fits within the general rule that the issue is one of material fact on which a jury should decide. A fortiori, the Court cannot hold as a matter of law that Kreiser's actions amounted to willful and wanton conduct if it has not been established that Kreiser's conduct was the proximate cause of McCoy's injuries. The Court, therefore, must decline McCoy's invitation to grant summary judgment with respect to this issue.

**B.     Affirmative Defenses**

**1.     Contributory Negligence**

McCoy argues that this affirmative defense should be barred as a matter of law because Kreiser's conduct, he alleges, was willful and wanton. In *Ziarko*, the Illinois Supreme Court clarified that only intentionally willful and wanton conduct and not reckless conduct would prevent the use of contributory negligence as an affirmative defense. See 641 N.E.2d at 408. As this Court has already determined that only the issue of recklessness may be brought before a jury, Iberdrola's affirmative defense of

contributory negligence is proper, and the Court denies McCoy's motion for summary judgment with respect to it.

**2.     Proximate Cause**

McCoy moves for summary judgment with respect to two proximate cause affirmative defenses: (i) that McCoy was the sole proximate cause of the accident; and (ii) that the actions of third parties, namely Outland and Gamesa, were the sole proximate cause).  The Court will not rehash its exegesis of the proximate cause issue in Section A, supra.  The matter involves difficult scientific issues that a jury and not this Court should resolve after the parties present expert testimony on the relationship between the energization, the failure to use grounding straps, the wrench, and the arc flash.  A jury may find that the actions of Outland and Gamesa, with whom McCoy has already settled, contributed to the accident.  As there may be more than one proximate cause, a jury might find that all of the above-mentioned events contributed to McCoy's injuries.  The Court views a jury as the proper arbiter of the degree of fault to be borne by McCoy, Iberdrola, Outland, and Gamesa.  Hence, McCoy's motion for summary judgment with respect to the proximate cause affirmative defenses is denied.

## CONCLUSION

In sum, McCoy's motion for partial summary judgment is denied.  Streator's motion for summary judgment is granted.  Iberdrola's motion for partial summary judgment is granted with respect to: (i) intentional willful and wanton conduct; and

(ii) punitive damages. A jury may consider Kreiser's conduct to determine whether it was recklessly willful and wanton.

_____

Charles P. Kocoras
United States District Judge

Dated:   August 7, 2013